Good morning everyone. I first would like to thank Judge Stephen Vu from the Western District of Missouri for joining with us today and helping us out with our calendar which is very heavy here in the night so we really appreciate it and it's nice to meet you as well. And we will take the cases up in the order in which they appear on the docket. I don't believe we have any submitted cases today so we will start with Jiminez v. Garland. Good morning. May it please the court, my name is Thomas J. Stefanski and I represent the petitioner Jose Jiminez. Mr. Stefanski are you appearing by video or just by phone? Just by phone. Alright thank you. May I proceed? Yes you may. The issues in this case are quite confined to three things. One is whether or not the petitioner was convicted of an aggravated felony based on an Arkansas statute. Additionally the issue is concerned whether or not the petitioner failed to establish a clear probability of future persecution in order to apply for withholding of removal and whether or not he failed to prove his clear probability of future torture under the convention against torture. Now the court had suggested remanding this case back to the BIA under the recent case of Pereira v. Wilkinson. That was to determine whether or not the person has been convicted of an actually aggravated felony. The reason the aggravated felony is important in this case is that if it is determined that the petitioner has been convicted of an aggravated felony, he is not eligible for asylum or for NACARA which he had applied for and which would have relief that could have given him possible permanent residence in the United States. Mr. Stefanski, I want to make sure I have the procedural posture of this case correct. Okay. The IJ originally found that Mr. Jimenez had committed both a particularly serious crime and an aggravated felony. That's correct. And then there was an appeal to the BIA. And this is what I want to make sure I understand correctly. On that appeal, Mr. Jimenez only challenged the particularly serious crime finding. Yes, that's correct. And the BIA says in its decision he didn't appeal the aggravated felony decision, as to particular serious crime, we're going to send it back to the IJ to make a determination in light of an intervening Ninth Circuit case. Right. Okay. So we're with each other so far. So tell me what you think happened once it went back to the IJ. Well, once it went back to the IJ, the IJ dropped the issue regarding the whether or not it was a particular serious crime. But the IJ still found that the crime constituted an aggravated felony due to the fact under the looking at whether or not it was a categorical approach and said that they found that because the conviction was for a, the actual thing was for possession of a patrolled substance and intent to distribute. Well, that's where, now this is where I need your help. On remand, where does the IJ find again that it's an aggravated felony? I don't see that finding in his, his or her, I forget who it was, decision on remand, her. I thought the only issue on remand, because you hadn't appealed the aggravated felony finding the first time was whether this qualified as a PSC under the, under current Ninth Circuit law. What am I missing? Well, I would say that even if, I don't know if the judge did bring it up. I couldn't say right off hand. I was not the attorney in the court at that time, but even so it was brought up on the first appeal and when it was brought up on the first appeal, that's my problem. So that's why I asked you the initial question. On the first appeal, there was no argument made that this wasn't an aggravated felony. And indeed, there's a footnote in the BIA order that says you didn't make that argument. You didn't appeal that. So I'm trying to figure out why the aggravated felony issue is still alive. Okay. It was my understanding or is my was not, or the respondent at that time was not eligible for asylum or for NACARA because it was, he was convicted of an aggravated felony. So the judge did not consider those two cases, those two applications, because I believe it was that she found that there was an aggravated felony. So the reason I ask is because the BIA found that you'd waived the argument about aggravated felony by not raising it the first time. And so why was that wrong? I don't think it was wrong, but it was raised at the, at the second BIA appeal because the judge had found that the respondent was not eligible for asylum or for NACARA. Okay. Thank you. Due to having an aggravated felony. Now, our argument is that under, in light of the Parada versus Wilkerson case, that the court should consider remanding this back in order for giving the petitioner the opportunity to contest once again, whether or not he was convicted of aggravated felony. The issue in this case, which is very, very unique in the sense that he was convicted of a crime, as we said, possession with intent to distribute, which they claim was a class Y felony. Well, under Arkansas law, a class Y felony requires as a minimum, a 10 year sentence of imprisonment for 10 years. And that's the minimum requirement. Yet the petitioner was only given 10 months probation. So it's very unclear whether or not that under the controlled substance act, whether or not he was actually convicted of a felony. The records that were presented so far to the court are very unclear, other than to say that he was convicted of a controlled substance with intent to distribute. It does not state the substance. It does not state the amount, and it does not have a 10 year minimum imprisonment as required under the class Y felony that the government is relying on. So, under Pareda, yeah. I just, I guess I'm having the same problem as Judge Hurwitz. I don't understand how that issue is still before us, whether or not it was an aggravated felony. And maybe, you know, maybe I shouldn't be so worried about that. Well, once again, the IJ denied the applicant's or pre-dermitted the applicant's asylum application and his NACAR application, stating that it was being pre-dermitted because he was convicted of an aggravated felony. Right, right. And so the question in my mind is whether you got a do-over, whether you got a do-over on appealing the aggravated felony finding that you hadn't appealed the first time, simply because the BIA remanded for a new finding on PSC. And when you came back, the BIA said, no, you should have raised that the first time if you thought it wasn't an aggravated felony. So, tell us why they were wrong about that. That's what I'm, I think that's what both of our questions go to. Well, I think that it just goes back to, once again, a decision that the IJ made at the time of the remand hearing about the asylum and having made that decision to pre-dermit those cases, that it would be an issue de novo to be brought up on appeal, on the second appeal. So, our argument as far as having it to be remanded as the court originally was going to do would be to give the petitioner the opportunity under the Pareto case, they expand a little bit and say that more than the record of conviction can be used to assist you in explaining what your conviction was actually for. So, I just want to understand your argument that it's not an aggravated felony. Okay. Would you? Sure. The whole argument is this, the statute itself is very unclear as to what drugs are involved or the amount of drugs and the conviction record does not show either one, doesn't show what drugs or what amount. More so, like I said, for under the Controlled Substance Act, it requires that the acts constitute a felony. Well, in this particular case, the government is claiming that according to the Arkansas statute, he was convicted of a class Y felony. Well, the class Y felony mandates a 10-year minimum imprisonment and the petition was only given 10 months and no imprisonment. So, our argument is that how can it be a class Y felony if he wasn't given the minimum requirement for a class Y felony? And as the case of Moncrief stated, that many times a statute will include other lesser crimes within it that are not necessarily felonies that can be misdemeanors. And here it's just totally unclear as to what he was actually convicted of. Like I said, our argument is that it can't be a class Y felony because he didn't get the minimum sentence. So, I think he should be given the opportunity under the PAREA to bring in possibly extrinsic evidence other than the record of conviction to try to explain what the conviction was actually for. But doesn't PAREA only apply to PSCs where the facts of the crime are relevant? Isn't the aggravated felony determination done categorically? Well, it's done categorically unless it's ambiguous. And here you have a very, very ambiguous statute. Like I said, it doesn't state the drugs involved, doesn't state the amounts of the drugs involved. It's very, very ambiguous. And then the question is whether or not it's a divisible statute, which our argument is that it must be divisible because they're giving him a sentence entirely different than what is mandated by the statute for a controlled substance under the class Y felony. All right, counsel, why don't we let Ms. Byram respond and then you can reserve the remainder of your time. Okay, very well, your honor. Thank you. May it please the court, I am Sarah Byram appearing on behalf of Merrick B. Garland, the United States Attorney General. This court should deny the petition for review. All that is before the court is petitioner's eligibility for relief and protection from removal. But here he cannot show eligibility for any of the relief he seeks. He is barred from asylum given his drug conviction, and he cannot show the record compels the conclusion that he is eligible for withholding of removal or convention against torture protection. He was not previously persecuted. Counsel, I want you to address two things for me. First, was the BIA correct in finding that Mr. Jimenez had waived his right to challenge whether his conviction was an aggravated felony? And second, assuming that they were wrong about that, what should we do? First, the the board was not wrong about his waiver. And as we argue in brief, he has waived, he has failed to exhaust. He also doesn't really challenge it in his brief before this court. So this issue of the aggravated felony really shouldn't be on the table anymore. But even assuming that the board was wrong about that, here his conviction records are very clear in the record. He has this conviction for possession of a controlled substance with intent to deliver. It states on the records that it was cocaine. So we know that. It also states that he was convicted of a class Y felony. So we know that as well. So the records are clear on the conviction that he had. And I would note that the Fifth Circuit has already decided that this statute of conviction under Arkansas law is categorically an illicit trafficking aggravated felony. So right. So let me stop you right there and ask. So in the transcripts, it says that to be a class Y felony, it requires a 10 year sentence. But it's clear that he did not get a 10 year sentence. So it's there seems to be some confusion in the record of what he was actually convicted of. Well, the record, the conviction records that are in the record all indicate that he was convicted of a class Y felony. Now, as to the discrepancy between the sentence, I can't speak to that or what happened before the criminal court. But what I can tell you is that in the conviction records that are in the administrative record, they all indicate that it was a class Y felony that he was convicted of. But I think the federal categorical doesn't the federal generic crime require that the crime be punishable by a longer sentence? Well, if we're looking to what's the federal definition of an depends, it differs to this case for drugs. If we're looking at the controlled substances offense, it would be excuse me, an offense that is punishable under the Controlled Substances Act and would be punishable under the act as a felony. Or there's also the illicit trafficking prong, which the Fifth Circuit has found this statute of conviction categorically falls underneath that and would constitute an aggravated felony under the illicit trafficking prong. So I'm still trying, I'm trying to figure out here, is it relevant for the federal aggravated felony definition that the crime be punishable under state law by a certain amount of time? I don't think it is, is it? It's not. It's not. His argument is really that I couldn't have been convicted of a class Y felony because if I had been, I would have gotten mandatorily more than whatever sentence I got. Yes. And under the, under either the Controlled Substances Act prong or the illicit trafficking prong, it doesn't, it doesn't matter. And so here, if the court considers this issue de novo as it can do, and we have no trouble if the court proceeds on that. I mean, obviously we've argued that exhaustion and waiver should rule, but if the court proceeds beyond, we would encourage that the court take the approach of the Fifth Circuit and hold the same petitioner has not. Can we, we can't decide a case on a basis different than the BIA. And so if we were to decide it wasn't waived, wouldn't we have to send it back to the BIA in the first instance to address this? Not necessarily because this case does involve, you know, criminal statutes and the interpretation of criminal law and the court, this court has held that on those issues, you know, we don't necessarily have to defer to the board's expertise, obviously. No, it's not an issue of deference. Can we, we don't have the jurisdiction to make it in the first, we can't address an issue not addressed by the BIA, can we? Well, certainly not. But if for whatever reason, this court finds that, you know, the BIA was wrong on that, then the court could address this as a legal issue. And the BIA never decided in this case, whether it was an aggravated felony. It just said you never appealed. Yes, therefore, we won't address it. Yes, I don't think we can sustain them on a basis that they never addressed. Can we? Well, generally not. But this court, you know, has said in other cases, with respect to criminal laws and the interpretation of criminal statutes that, you know, these are legal issues that the court could consider. We're missing each other. We don't defer to the BIA on its, on its reading of criminal statutes, we can read them as well as the BIA can. But I don't think we can decide a case on a basis that they didn't decide it. Well, to follow up on that question, but I think what we, because the conclusion that this was an aggravated felony eliminated the possibility of asylum relief or relief under NACARA, then I think that what we would be demanding to the BIA is, you know, whether or not this was an aggravated felony. And if so, if not, is he entitled to relief under the asylum provisions? Well, on that note, I would say that even if there is ambiguity, PARADA would make the outcome in our favor. And I would also note with respect to that, that petitioner has had opportunities before the agency to submit additional records to show clearly that his conviction is not an aggravated felony. And he failed to do so before the agency before. So it's not clear what he would be presenting again this time when he had that opportunity before. And of course, as we argued, the conviction records are clear with respect to his aggravated felony. But certainly we do have the issues of exhaustion and waiver. And so the court could dispose of this case on those alone. If I may just turn briefly to his claims for withholding and CAT, it's our position that he hasn't shown past persecution or a clear probability. He has only these anonymous threats. They're unaccompanied by any additional sense of immediate physical violence or other actions, which would render them as rising to the level of persecution. And then on future persecution, it's entirely speculative. And that's the same with respect to the Convention Against Torture. If there are no further questions, I'll briefly conclude. Well, he also argues that the IJ and the BIA, well, the BIA failed to consider the letters submitted by his brother, which further bolsters his claims. With respect to that, you know, the agency, the board considered it. I think it's fair to say that the agency did consider it as part of its holistic review of the record and the evidence. And that's also, we presume that agency officials acted with regularity. There's no reason to think that they didn't examine the entire record here. Here, the BIA says that Jimenez did not provide any evidence of possible future persecution or possible future torture when the letter does in fact provide evidence of both. Well, what the letter, which was addressed, the letter itself, I wouldn't go so far as to say that it provides that evidence. It's very speculative. It just makes these claims of rumors. And that's the word that were used. You know, rumors and deaths of unspecified people that have worked for the government. So it's very speculative. It's very vague. There's nothing specifically connecting it to the petitioner in this case. What I'm saying is that the IJ still needs to have considered it. I mean, the BIA still needs to have considered it. Well, the board says that it did address it. Your argument is that it's not very weighty evidence. Certainly, it's vague and speculative. And we also point out in our brief that any remand just on the basis of this letter would be futile because it isn't sufficient on its own. And even in combination with his vague, you know, future fears, you know, these threats more than 30 years ago, he doesn't give any reliable evidence that, you know, any specific evidence that ex-military are being harmed now that he specifically knows of. And the country conditions evidence also makes no mention of ex-military being targeted or harmed, you know, now almost 40 years later. The BIA did address the letter. The concern I think Judge Wardlaw is expressing is that the IJ didn't. The BIA addresses the letter and says it's unsubstantiated and insufficient to support its claims. So but the question is, because the IJ didn't address it and made a statement that there was no objective evidence of likely future persecution, do we have to worry about whether the IJ actually looked at the letter? I think that the board indicates that there's no evidence that the immigration judge didn't look at the letter as part of his holistic review. And I think, you know, there again, what's in the letter is very vague and speculative and similar to what the board mentioned. You know, it would be futile to remand for just consideration of this letter where it there's no evidence that it, you know, pushes this case over the threshold, if you will. You know, given it is very vague, it's very speculative. There's no connection specifically to our applicant, the petitioner here in this case. And so the board was quite right to say that it isn't sufficient to, you know, have the immigration judge, you know, this doesn't compel the immigration judge to find a finding of a future persecution. So how long has Mr. Jimenez been in this country? He's been in this country, I believe, since the late 80s, because he has indicated that he came, if I recall correctly, sometime around 1989. That is correct, 89. Okay. And are there any other criminal convictions other than this Arkansas 1996 crime? Not that I recall. And in any event, the Arkansas crime is certainly the one that's relevant for our purposes here. Okay. Thank you, counsel. I'm sorry to take you way over. Mr. Stefanski? Yeah, just a couple things, your honor. The first of all, I'd like to point out that the government itself said that they can't speak to the discrepancy of the crime between the sentence and the class-wide felony requirements, which I think that is a big thing now. Excuse me, Blanca, this is Mr. Stefanski, and he has three minutes and 51 seconds left. But that was over time, your honor. That was over? Yes. Okay. Why don't you give him three minutes? Okay. And the only other thing I would like to say is that under Pareto, they go beyond, at the time of his hearing before the IJ, he was limited to producing the record of conviction to prove or disprove the conviction. Whereas under Pareto, they said that the people should be allowed to go beyond the record of conviction. And he never had that. I asked you this the first time, and I'm still not sure we're on the same wavelength about it. Isn't Pareto about PSC determinations? Particularly serious crime determinations are not limited to the shepherd documents, if you will, the documents of conviction, but rather the judge can look at the facts of the sent back on the PSC. But on aggravated felony, aren't we limited to the categorical approach? I would argue that even under the categorical approach, once again, the statute is so vague and ambiguous that it would lead you down to the modified. And under the modified approach, he should be able to, under the dicta from the Pareto case, go into more detail, other detail or other evidence other than the record of conviction. And the final thing I would just like to say is that in regards to the withholding and the Convention Against Torture, once again, the petitioner here was found to be credible. There was nothing in his testimony that was not believable. And as such, he testified that he felt his life was in danger. He had his brother submit a letter attesting to the fact that other people similarly situated had been killed after receiving threats. And therefore, the judge should have considered the brother's letter as well. And I conclude with that. All right. Thank you, counsel. Thank you very much. Thank you very much. Jimenez v. Garland will be submitted.
judges: WARDLAW, HURWITZ, Bough